# Exhibit A

# CORBUS PHARMACEUTICALS

## MUTUAL NONDISCLOSURE AGREEMENT

This Mutual Nondisclosure Agreement (the "Agreement") is made as of November 14, 2020 by and between Corbus Pharmaceuticals Inc., a Delaware corporation located at 500 River Ridge Dr. Norwood, MA 02062 (the "Company"), and Venn Therapeutics, LLC an Ohio limited liability company located at 3802 Spectrum Blvd. Suite 146, Tampa, FL 33612 ("Third Party").

1. **Purpose.** The Company and Third Party wish to explore a possible business opportunity of mutual interest **regarding the Third Party and its business operations involving the development of therapeutics targeting integrins for the treatment of human conditions** (the "Relationship") in connection with which each party has disclosed and/or may further disclose its Confidential Information (as defined below) to the other. This Agreement is intended to allow the parties to continue to discuss and evaluate the Relationship while protecting each party's Confidential Information (including Confidential Information previously disclosed to the other party) against unauthorized use or disclosure.

2. **Definition of Confidential Information.** "Confidential Information" means any oral, written, graphic or machine-readable information including, but not limited to, that which relates to patents, patent applications, research, product plans, products, developments, inventions, processes, designs, drawings, engineering, formulae, markets, regulatory information, medical reports, clinical data and analysis, reagents, cell lines, biological materials, chemical formulas, business plans, agreements with third parties, services, customers, marketing or finances of the disclosing party, which Confidential Information is designated in writing to be confidential or, if given orally or in other intangible form, provided under circumstances reasonably indicating it is confidential or proprietary or confirmed in writing as having been disclosed as confidential or proprietary within a reasonable time (not to exceed thirty (30) days) after the oral disclosure.

3. **Nondisclosure of Confidential Information**

    (a) The Company and Third Party each agree not to use any Confidential Information disclosed to it by the other party for its own use or for any purpose other than to carry out discussions concerning, and the undertaking of, the Relationship. Neither party shall disclose or permit disclosure of any Confidential Information of the other party to third parties or to employees of the party receiving Confidential Information, other than directors, officers, employees, consultants and agents who are required to have the information in order to carry out the discussions regarding the Relationship and who are bound by confidentiality agreements ("Representatives"). Each party agrees that it shall take all reasonable measures to protect the secrecy of and avoid disclosure or use of Confidential Information of the other party in order to prevent it from falling into the public domain or the possession of persons other than those persons authorized under this Agreement to have any such information. Such measures shall include, but not be limited to, the highest degree of care that the receiving party utilizes to protect its own Confidential Information of a similar nature, which shall be no less than reasonable care. Each party agrees to be responsible for enforcing the terms of this Agreement

as to its Representatives and to be liable for any disclosure of the Confidential Information by any of its respective Representatives. Each party agrees to notify the other in writing of any actual or suspected misuse, misappropriation or unauthorized disclosure of Confidential Information of the disclosing party which may come to the receiving party's attention.

(b) **Exceptions**. Notwithstanding the above, neither party shall have liability to the other with regard to any Confidential Information of the other which the receiving party can prove:

(i) was in the public domain at the time it was disclosed or has entered the public domain through no fault of the receiving party;

(ii) was known to the receiving party, without restriction, at the time of disclosure, as demonstrated by files in existence at the time of disclosure;

(iii) is disclosed with the prior written approval of the disclosing party;

(iv) was independently developed by the receiving party without any use of the Confidential Information of the disclosing party and by employees of the receiving party who have not had access to the Confidential Information, as demonstrated by files created at the time of such independent development;

(v) becomes known to the receiving party, without restriction, from a source other than the disclosing party without breach of this Agreement by the receiving party and otherwise not in violation of the disclosing party's rights; or

(vi) is disclosed pursuant to the order or requirement of a court, administrative agency, or other governmental body; provided, however, that the receiving party shall provide prompt notice of such court order or requirement to the disclosing party to enable the disclosing party to seek a protective order or otherwise prevent or restrict such disclosure.

4. **Return of Materials**. Any materials or documents that have been furnished by one party to the other in connection with the Relationship shall be promptly returned by the receiving party, accompanied by <u>all</u> copies of such documentation, within ten (10) days after (a) the Relationship has been rejected or concluded or (b) the written request of the disclosing party, and the return of such documents and the Confidential Information shall be certified in writing to the disclosing party by an authorized officer of the receiving party. Notwithstanding the return of the Confidential Information, each party will continue to be bound by its obligations hereunder.

5. **No Rights Granted**. Nothing in this Agreement shall be construed as granting any rights under any patent, copyright or other intellectual property right of either party, nor shall this Agreement grant either party any rights in or to the other party's Confidential Information other than the limited right to review such Confidential Information solely for the purpose of determining whether to enter into the Relationship.

6. **Term**. The foregoing commitments of each party shall survive any termination of the Relationship between the parties, and shall continue for a period terminating on the later to

occur of the date (a) five (5) years following the date of this Agreement or (b) three (3) years from the date on which Confidential Information is last disclosed under this Agreement.

7. **Successors and Assigns**.  The terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties, provided that Confidential Information of the disclosing party may not be assigned without the prior written consent of the disclosing party unless the assignee shall be the successor entity to the assignor upon the dissolution of the assignor in its present form.  Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties hereto or their respective successors and assigns any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement.

8. **Severability**.  If one or more provisions of this Agreement are held to be unenforceable under applicable law, the parties agree to renegotiate such provision in good faith.  In the event that the parties cannot reach a mutually agreeable and enforceable replacement for such provision, then (a) such provision shall be excluded from this Agreement, (b) the balance of the Agreement shall be interpreted as if such provision were so excluded and (c) the balance of the Agreement shall be enforceable in accordance with its terms.

9. **Independent Contractors**.  The Company and Third Party are independent contractors, and nothing contained in this Agreement shall be construed to constitute the Company and Third Party as partners, joint venturers, co-owners or otherwise as participants in a joint or common undertaking.

10. **Governing Law**.  This Agreement and all acts and transactions pursuant hereto and the rights and obligations of the parties hereto shall be governed, construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts, without giving effect to principles of conflicts of law.

11. **Remedies**.  The Company and Third Party each agree that its obligations set forth in this Agreement are necessary and reasonable in order to protect the disclosing party and its business.  The Company and Third Party each expressly agree that due to the unique nature of the disclosing party's Confidential Information, monetary damages would be inadequate to compensate the disclosing party for any breach by the receiving party of its covenants and agreements set forth in this Agreement.  Accordingly, the Company and Third Party each agree and acknowledge that any such violation or threatened violation would cause irreparable injury to the disclosing party and that, in addition to any other remedies that may be available, in law, in equity or otherwise, the disclosing party shall be entitled to obtain injunctive relief against the threatened breach of this Agreement or the continuation of any such breach by the receiving party, without the necessity of proving actual damages.

12. **No Warranty**.  Each party acknowledges that neither the other party nor any of its respective Representatives have made or hereby make any representation or warranty as to the accuracy or completeness of any Confidential Information disclosed hereunder.

13. **Regulation FD**.  Each party hereby acknowledges that it is aware, and that it will advise its Representatives who receive any Confidential Information, that the securities laws of

the United States prohibit any person who has material, non-public information concerning the other party from purchasing or selling securities in reliance upon such information or from communicating such information to any other person or entity under circumstances in which it is reasonably foreseeable that such person or entity is likely to purchase or sell such securities in reliance upon such information.

14. **Amendment and Waiver.**  Any term of this Agreement may be amended with the written consent of the Company and Third Party.  Any amendment or waiver effected in accordance with this Section shall be binding upon the parties and their respective successors and assigns.  Failure to enforce any provision of this Agreement by a party shall not constitute a waiver of any term hereof by such party.

15. **Counterparts**.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute one instrument.

16. **Entire Agreement.**  This Agreement is the product of both of the parties hereto, and constitutes the entire agreement between such parties pertaining to the subject matter hereof, and merges all prior negotiations and drafts of the parties with regard to the transactions contemplated herein.  Any and all other written or oral agreements existing between the parties hereto regarding such transactions are expressly canceled.

17. **No Publicity.**  Neither the Company nor Third Party shall, without the prior consent of the other party, disclose to any other person the fact that Confidential Information of the other party has been and/or may be disclosed under this Agreement, that discussions or negotiations are taking place between the Company and Third Party, or any of the terms, conditions, status or other facts with respect thereto, except as required by law and then only with prior notice as soon as possible to the other party.

*[Remainder of page intentionally left blank]*

The parties have executed this Mutual Nondisclosure Agreement as of the date first above written.

**CORBUS PHARMACEUTICALS**

By: *Dylan Wenke* (DocuSigned by: 53F8DF36DD274F7...)

Name: Dylan Wenke

Title: Director, Business Development

Address: 500 River Ridge Dr
         Second Floor
         Norwood, MA 02062


**VENN THERAPEUTICS, LLC**

By: *M. Brad Hill*

Name: M. Brad Hill

Title: Chief Administrative Officer

Address: 3802 Spectrum Boulevard, Suite 146
         Tampa, Florida 33612