## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

VENN THERAPEUTICS,
          Plaintiff,

    vs.

CORBUS PHARMACEUTICALS
HOLDINGS, INC., YUVAL COHEN,
and DYLAN WENKE,
          Defendants.

Case No. 8:21-cv-02716-JLB-TGW

### DEFENDANTS CORBUS PHARMACEUTICALS
### HOLDINGS, INC., YUVAL COHEN, AND DYLAN WENKE'S
### MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Venn Therapeutics ("Venn") licensed a monoclonal antibody ("mAb") from the University of California San Francisco ("UCSF") in 2018 and labeled it "VTX-001." Corbus Pharmaceuticals, Inc. ("Corbus"), a drug development company, engaged in discussions with Venn about collaborating to develop immunotherapy treatments starting in November 2020, but Corbus terminated those discussions in February 2021. Venn now claims Corbus and individual defendants (collectively, "Defendants") misappropriated its trade secrets but fails to describe the alleged trade secrets with any level of detail, leaving Defendants to wonder what trade secrets they allegedly used. Venn suggests that Defendants misappropriated trade secrets from its "numerous experiments" and "many strategic decisions" regarding VTX-001, but fails to plead any details in its complaint about those "experiments" or "decisions." Venn also bizarrely suggests that the existence of a different mAb (that Venn misleadingly calls the "child molecule" of its licensed mAb, VTX-001) that it had an option to license

until the option expired due to Venn's inability to raise funds, and which *UCSF* was publicly offering to license, is somehow *Venn's* trade secret. Venn's trade secret claims (Counts II and III) and breach of contract claim (Count I) must be dismissed for failure to plead any "trade secret" or "Confidential Information" with sufficient specificity.

Venn's other claims (Counts IV-IX) must be dismissed with prejudice because the Massachusetts Uniform Trade Secrets Act ("MUTSA") preempts all of Venn's common law claims and its Massachusetts unfair competition claim, which all stem from the same alleged trade secret misappropriation. Even if those claims were not preempted, each fails to state a claim under Rule 12(b)(6).

Defendants respectfully request the Court dismiss the complaint in its entirety.

## Statement of Facts[1]

In 2018, Venn licensed rights to a mAb from UCSF that it labeled VTX-001. Doc. 70 ¶ 16. Venn alleges it "conducted numerous experiments and made many strategic decisions about how to make its immunotherapy program based on VTX-001 successful," including testing "effectiveness," "safety," and "design, manufacture, and administration," *id.* ¶¶ 20-23, although it does not describe what those experiments or strategic decisions were.

UCSF independently developed what Venn describes as a "child molecule," which Venn "expected . . . would be a very promising immunotherapy lead." *Id.* ¶¶ 29-

---

[1] The factual background is based on the allegations of the complaint, which are accepted as true for purposes of this motion only, and facts of which the Court may properly take judicial notice. Corbus does not concede the accuracy or completeness of any of the facts alleged in the complaint.

30. Venn "intended to license the child molecule" from UCSF, *id.* ¶ 33, and entered an exclusive negotiation agreement to do so that expired December 31, 2020, *id.* ¶ 34.

Venn and Corbus were introduced in November 2020. *Id.* ¶ 49. Venn then sent Corbus a non-confidential slide deck, *id.* ¶ 51, which contained information about VTX-001, Dr. Nishimura and UCSF, and other companies pursuing similar therapies, including Morphic, Scholar Rock, Merck, and others, *see* Ex. 1.[2] Corbus and Venn executed a Mutual Non-Disclosure Agreement ("MNDA") on November 14 to facilitate a potential business opportunity between Corbus and Venn. Doc. 70 ¶¶ 53, 55. The MNDA contained definitions of "Confidential Information," as well as well-defined "Exceptions," including information that "was in the public domain at the time it was disclosed or has entered the public domain through no fault of the receiving party." *Id.*, Ex. A at 2. Venn then allegedly shared with Defendants (1) "confidential and proprietary data, reports, and analyses" (but does not specify what was shared), *id.* ¶ 63; (2) its "expectations" that UCSF's "child molecule" would "perform similarly to VTX-001," *id.* ¶ 65; and (3) its desire for a license from UCSF for the "child molecule," *id.*

Corbus ended its discussions with Venn on February 24. *Id.* ¶ 72. Corbus's CEO

---

[2] The Court may consider at the motion to dismiss stage the nonconfidential slide deck referred to in Venn's complaint (attached here as Exhibit 1), as it "is central to the plaintiff's claim and the authenticity of the document is not challenged." *Adamson v. Poorter*, 2007 WL 2900576, at *2 (11th Cir. Oct. 4, 2007). Determining whether Venn's alleged trade secrets encompassed any information beyond the non-confidential information shared in the slide deck—which Venn cited and thus incorporated in its amended complaint, Doc. 70 ¶¶ 51-52—is central to resolving Venn's claims. The authenticity of the document cannot be disputed, as Venn submitted this document as Exhibit 11 to its Motion for a Preliminary Injunction.

Yuval Cohen emailed Venn that Corbus "needed more time to conduct additional work" and "it wouldn't be right for us to hold you back from moving forward with other potential partners." *Id.*[3]

Venn continued to try to license the "child molecule" from UCSF after its exclusive negotiation period with UCSF ended. *Id.* ¶ 77. In March 2021, UCSF informed Venn there was another company interested in licensing the molecule but invited Venn to submit a proposal. *Id.* ¶¶ 75, 77. Venn submitted its proposal at the end of March, but UCSF rejected it. *Id.* ¶¶ 77-78. Following outreach by Corbus's Head of Business Development Dylan Wenke, UCSF ultimately licensed what Venn calls the "child molecule" to Corbus, which Corbus announced on June 1, 2021. *Id.* ¶¶ 74, 79. Venn filed this lawsuit nearly six months later on November 18, 2021, and its Motion for a Preliminary Injunction six days after that, on November 24, 2021. Venn filed its First Amended Complaint on April 6, 2022.

## Standard of Review

Under Rule 12(b)(6), courts must grant a motion to dismiss when "the movant demonstrates beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1262 (11th Cir. 2004). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Conclusory allegations, unwarranted deductions of facts or legal conclusions

---

[3] Unless otherwise noted, all internal quotation marks, citations, footnotes, and alterations have been omitted.

4

masquerading as facts will not prevent dismissal." *Jackson*, 372 F.3d at 1262.

Venn must plead facts sufficient to meet the heightened pleading standard of Rule 9(b) for Counts IV-VI (fraudulent misrepresentation, negligent misrepresentation and fraudulent omission), and to the extent that it is based on alleged fraud, Count IX (unfair competition).[4] Rule 9(b) requires that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

## Argument

Venn's complaint is replete with speculation and conclusory statements, but it lacks the specific factual allegations required to carry its pleading burden.

### (I)   Venn Fails to Plead its Trade Secrets With Sufficient Specificity (Counts II & III).

"It is hornbook law that the parties and the court cannot accurately decide the question of whether a trade secret exists without first understanding what precisely is asserted as a secret." *Sutra, Inc. v. Iceland Exp.*, 2008 WL 2705580, at *3 (D. Mass. July 10, 2008). To state a claim under either the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, or the Massachusetts Uniform Trade Secrets Act ("MUTSA"), Mass. Gen. Laws ch. 93, § 42 *et seq.*, Venn must plead its alleged trade secrets with "sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade." 1 Trade Secrets Law, Pleadings under the DTSA, § 4:7. Furthermore, a plaintiff must "distinguish what is protectable

---

[4] *Engren v. Johnson & Johnson, Inc.*, 2021 WL 4255296, at *5 (D. Mass. Sept. 17, 2021) (fraudulent misrepresentation, negligent misrepresentation, and unfair competition); *Costa v. FCA US LLC*, *2021 WL 2338963*, at *11 (D. Mass. June 8, 2021) (fraudulent omission).

from that which is not," since "a trade secret claim based on readily observable material is a bust." *Sutra*, 2008 WL 2705580, at *3-4.

A plaintiff asserting a DTSA claim therefore must plead "a trade secret with sufficient particularity so as to provide notice to a defendant of what he is accused of misappropriating and for a court to determine whether misappropriation has . . . occur[red]." *Lithero, LLC v. AstraZeneca Pharms. LP*, 2020 WL 4699041, at *1 (D. Del. Aug. 13, 2020) (dismissing complaint on the ground that it pleads "large, general areas of information that Plaintiff alleges to have shared with Defendant, but does not identify what the trade secrets are within those general areas"). The standard under the MUTSA also requires a plaintiff to plead facts identifying its alleged trade secrets with "reasonable particularity." *See* Mass. Gen. Laws ch. 93, § 42D(b) ("In an action . . . alleging trade secrets misappropriation a party *must state with reasonable particularity the circumstances thereof, including the nature of the trade secrets* and the basis for their protection." (emphasis added)); *see also TLS Mgmt. v. Rodriguez-Toledo*, 966 F.3d 46, 53 (1st Cir. 2000) ("Courts interpreting the UTSA have uniformly followed" the requirement that "a person claiming rights in a trade secret bears the burden of defining the information for which protection is sought with *sufficient definiteness* to permit a court to apply the criteria for protection . . . ." (emphasis added)).

Venn has alleged only vague and generalized categories of trade secrets without pleading any detail about what it asserts is protectable, leaving Defendants to guess the trade secret being claimed. While it is not clear what Venn is claiming are its "trade secrets," the general categories it alleges are not sufficient to satisfy its pleading burden.

Venn alleges that its trade secrets constitute "documents, data, results, analysis, strategies, and other information regarding Venn's VTX-001 and VTX-002 programs, as well as information about the child molecule of VTX-001, including the child molecule's existence and Venn's plans to license that molecule." Doc. 70 ¶ 110; *id.* ¶ 127. First, "documents, data, results, analysis, strategies, and other information," *id.*, are "extremely general description[s that are] not adequate to put Defendants on notice of the trade secrets at issue," *Island Intell. Prop., LLC v. StoneCastle Asset Mgmt. LLC*, 463 F. Supp. 3d 490, 500 (S.D.N.Y. 2020).   Courts in this District and the Eleventh Circuit have held a complaint must contain enough detail to "put [Defendant] on notice as to what material formed the basis for [Plaintiff's] claims," but cannot simply identify broad categories of information as Venn attempts to do. *DynCorp Int'l v. AAR Airlift Grp., Inc.*, 664 F. App'x 844, 849-50 (11th Cir. 2016). *Compare id.* (holding complaint adequately detailed the allegedly misappropriated trade secrets where it "did not just identify broad categories of information, such as financial and technical data, but specifically identified financial and technical data related to [Plaintiff]'s pre-existing WASS contract, including personnel lists, salary and pay differentials, and pricing data related to staffing and business operations"), *with Decurtis LLC v. Carnival Corp.*, 2021 WL 1968327, at *6-7 (S.D. Fla. Jan. 6, 2021) (granting motion to dismiss where complaint alleged "broad categories" of trade secrets, including "Project Trident deployment plans; Project Trident testing plans and results; . . . [and] Project Trident's particularized agile development methodology," because "using a label of Project Trident and then following it with categorical

7

descriptions tells [Defendant] nothing as to which trade secrets it misappropriated"), *report and recommendation adopted as modified*, 2021 WL 1540518 (S.D. Fla. Apr. 20, 2021). To the extent Venn is claiming its "numerous experiments" and "strategic decisions" constitute trade secrets, Doc. 70 ¶ 20, Venn fails to allege *which* experiments or decisions it is referring to, and how any such information differs from techniques well-known in the industry. Venn claims its strategy of targeting integrins with a mAb is "novel," but Venn's own non-confidential deck identified multiple companies in the industry developing similar therapies, including Morphic and Scholar Rock. *See, e.g.*, Ex. 1 at 14-15. Because Venn does not "distinguish what is protectable from that which is not," its claims must be dismissed. *Sutra*, 2008 WL 2705580, at *4.

Venn's allegations that "the child molecule's existence and Venn's plans to license that molecule" are trade secrets are even more specious because Venn's own pleadings demonstrate that if there were a trade secret, it was *UCSF's* and not Venn's. Doc. 70 ¶ 110. Venn concedes it had no rights to the "child molecule," because its nine months of exclusive negotiations with UCSF expired in December 2020 and its bid to UCSF in March 2021 was rejected by UCSF. *Id.* ¶¶ 34, 77-78. Venn alleges its expectations were that the child molecule was "likely to be promising" based on its work on VTX-001, *id.* ¶ 33, but in doing so, admits it never in fact had access to the molecule to test its expectations because it never had rights to do so. Venn alleges its "information about the child molecule" is a trade secret, *id.* ¶ 36, but does not say what information it is referring to. Venn also cannot have "proprietary information about the child molecule," *id.* ¶ 41, because it had no rights to the molecule—it was UCSF's

molecule to license, not Venn's. Venn's "information about the child molecule" was in fact only information about VTX-001 that Venn theorized might also apply to the UCSF molecule. *Id.* ¶¶ 30-31, 33. Venn admits it conducted no testing regarding the "child molecule," *id.* ¶¶ 31-33, and information about the "child molecule" was publicly available in the actual patent application, *see* Ex. 2, U.S. Patent Application No. 17/151,009, Fig. 4A (disclosing data regarding HuC6D4F12, the antibody that Venn calls the "child molecule," and more analytical data on HuC6D4, the antibody Venn labeled "VTX-001").[5] Venn's unsubstantiated "expectations that the child molecule would perform similarly to VTX-001" is not a trade secret, Doc. 70 ¶ 65, as it has no value. Further, Venn's vague allegation that its development plans for VTX-001 were a trade secret, *see id.* ¶ 32, is belied by the fact that Venn disclosed these plans in its non-confidential deck, *see, e.g.*, Ex. 1 at 31-34.

To plausibly plead a trade secret, a plaintiff must provide sufficient detail for a Court to reasonably infer the information is in fact a trade secret and not, for example, public information. It is manifestly unfair to expect Defendants to respond to Venn's trade secret misappropriation claims when Venn has failed to plead the alleged trade secrets with sufficient specificity. The Court should dismiss Venn's trade secret claims.

**(II)   Venn Fails to Plead a Breach of Contract Claim (Count I).**

Venn fails to plead a breach of the MNDA for two reasons. First, the MUTSA

---

[5] "The Court may take judicial notice of matters of public record, including publicly available patents and patent applications, without converting a motion to dismiss into a motion for summary judgment." *Kimberly-Clark Corp. v. Extrusion Group, LLC*, 2020 WL 4001129, at *4 n.29 (N.D. Ga. July 15, 2020).

preempts a breach of contract claim to the extent that the claim purports to cover information broader than that encompassed by the MUTSA's statutory definition of "trade secret." *Needham Bank v. Guaranteed Rate, Inc.*, 2021 WL 2019287, at *8 (Mass. Super. Apr. 17, 2021). Therefore, Venn's failure to plead its trade secrets with sufficient particularity to meet the standard of the MUTSA also *a fortiori* means that the complaint fails to state a claim for breach of the MNDA.

Second, Venn fails to state a claim for breach of the MNDA because it does not plead information sufficient to establish that the alleged trade secrets do not fall within the "Exceptions" to "Confidential Information" in the MNDA. The MNDA is clear there is no breach for use or disclosure of information that "was in the public domain at the time it was disclosed or has entered the public domain through no fault of the receiving party." Doc. 70, Ex. A at 2. All information that Venn alleges was a trade secret was made publicly available: in Venn's own publicly available non-confidential deck, *see* Ex. 1; in Dr. Nishimura's patents and publications;[6] by UCSF itself; and well-known industry standards and FDA regulations for IND submission.[7] Venn has not specifically alleged any trade secret that does not squarely fall into the MNDA's well-defined Exceptions. Thus, the Court should dismiss Count I.

_____

[6] *See* Ex. 3, U.S. Patent No. 10,954,304 (disclosing the making and optimization of HuC6D4, the antibody that Venn labeled VTX-001); Ex. 2, U.S. Patent Application No. 17/151,009 (disclosing data regarding HuC6D4F12, the antibody that Venn has labeled the "child molecule," and more analytical data on HuC6D4); Ex. 4, International Application No. PCT/US2021/013720 (disclosing data regarding HuC6D4F12 and HuC6D4). "The Court may take judicial notice of matters of public record, including publicly available patents and patent applications, without converting a motion to dismiss into a motion for summary judgment." *Kimberly*, 2020 WL 4001129, at *4 n.29.

[7] The public nature of the information Venn claims as its own trade secrets is yet another reason why Venn should be required to describe its trade secrets with sufficient particularity.

**(III)    The MUTSA Preempts All of Venn's Common Law Claims and its Chapter 93A Unfair Competition Claim Because They Stem From the Same Alleged Misappropriation (Counts IV-IX).**

The Court should dismiss Counts IV through IX,[8] because the MUTSA "supersede[s] any conflicting laws of the commonwealth providing civil remedies for the misappropriation of a trade secret," subject to certain exceptions, none of which applies here. Mass. Gen. Laws ch. 93, § 42F(a) & (b)(1)-(4). State law Uniform Trade Secret Acts (such as the MUTSA) displace *both* claims based on information that satisfies the statutory definition of "trade secret" *and* also "all claims stemming from the same acts as the alleged misappropriation." *Allied Erecting & Dismantling Co. v. Genesis Equip. & Mfg., Inc.*, 649 F. Supp. 2d 702, 722 (N.D. Ohio 2009) (collecting cases and interpreting the Uniform Trade Secrets Act ("UTSA") and the Ohio UTSA).[9]

Here, Counts IV through IX of Venn's complaint are all preempted because they are based on Venn's assertions that Defendants misappropriated Venn's trade secrets

---

[8] That is, Venn's claims for intentional misrepresentation (Count IV), negligent misrepresentation (Count V), fraudulent omission (Count VI), tortious interference with business relations (Count VII), unjust enrichment (Count VIII), and unfair or deceptive trade practices (Count IX).

[9] Massachusetts state courts have not yet interpreted the scope of the MUTSA's preemption provision, *see Netcracker Tech. Corp. v. Laliberte*, 2020 WL 6384312, at *5 (D. Mass. Oct. 30, 2020), but the majority of courts to consider the scope of UTSA preemption have held that "a claim can be displaced even if the information at issue is not a trade secret," *Allied Erecting*, 649 F. Supp. 2d at 722; *see, e.g.*, *Taubenfeld v. Lasko*, 324 So. 3d 529, 542 (Fla. Dist. Ct. App. 2021) (noting the "general rule" that "torts involving the same underlying factual allegations as a claim for trade secret misappropriation will be preempted by [the Florida UTSA]"). In light of the MUTSA's recognition that the purpose of the UTSA is to "make uniform the law with respect trade secrets" across states, Mass. Gen. Laws ch. 93, § 42G, Massachusetts would almost certainly follow the "majority rule" that the MUTSA bars claims based on the same set of allegations as a claim for trade secret misappropriation, and the Court should apply the rule here. *See Helsinn Healthcare S.A. v. Teva Pharm USA, Inc.*, 139 S. Ct. 628, 633-34 (2019) (courts should presume legislatures intend to adopt earlier judicial construction of statutes when they enact statutes with language used previously in another statute); *but see Neural Magic, Inc. v. Facebook, Inc.*, No. 1:20-cv-10444-DJC, Doc. 88 (D. Mass. Oct. 29, 2020) (considering the preemption issue but, in an unpublished docket entry, declining to apply preemption in the absence of Massachusetts case law).

or confidential information. Venn's misrepresentation and fraudulent omission claims (Counts IV through VI) are pleaded on the theory that Corbus (through Mr. Cohen) told Venn that it "'needed more time to conduct additional work' and that 'it wouldn't be right for us to hold you back from moving forward with other potential partners'" so that it could misappropriate Venn's trade secrets without court intervention. Doc. 70 ¶¶ 143, 152, 166. Venn's tortious interference claim (Count VII) is based on the allegation that Defendants misappropriated Venn's trade secret information to prevent Venn from obtaining a license from UCSF. Venn's unjust enrichment claim (Count VIII) alleges that Corbus reaped a benefit to which Venn was entitled by misappropriating Venn's trade secrets. Venn's unfair trade practices claim (Count IX) is based upon "Corbus'[s] conduct in relation to Venn," *id.* ¶ 194, *i.e.*, Corbus's alleged misappropriation of Venn's trade secrets. Because proving these claims as alleged by Venn would necessarily involve proving the misappropriation of a trade secret[10]— because it is the alleged misappropriation that makes the conduct tortious—these claims are preempted by the MUTSA and must be dismissed with prejudice.[11]

Finally, the UTSA's preemptive effect does not depend upon whether Venn has a viable or adequately pleaded claim under the MUTSA. Thus, even though Venn's MUTSA claim should be dismissed for failure to state a claim, Counts IV through IX

---

[10] *See Hauck Mfg. Co. v. Astec Indus., Inc.*, 375 F. Supp. 2d 649, 658 (E.D. Tenn. 2004).

[11] *See Lakeland Tours, LLC v. Bauman*, 2014 WL 12570970, at *8 (S.D. Cal. Feb. 11, 2014) (fraudulent and negligent misrepresentation preempted); *Am. Registry, LLC v. Hanaw*, 2014 WL 12606501, at *6 (M.D. Fla. July 16, 2014) (unfair trade practices and tortious interference claim preempted where "claim is premised solely on the use of plaintiff's Proprietary Information"); *Hauck Mfg.*, 375 F. Supp. 2d at 662 (unjust enrichment preempted).

also must be dismissed with prejudice as preempted by the MUTSA. *See, e.g.*, *Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1041 (11th Cir. 1995) (affirming dismissal with prejudice where claims were preempted).

### (IV)   In Addition to the Claims Being Preempted, Venn also Fails to State a Claim for Either Intentional Misrepresentation (Count IV) or Fraudulent Omission (Count VI).

Venn fails to plead its intentional misrepresentation and fraudulent omission claims, requiring dismissal under Fed. R. Civ. P. 12(b)(6) and 9(b).[12] Under Massachusetts law, to plead a claim for fraudulent misrepresentation, a plaintiff must plead facts sufficient to establish that the defendant: (i) "made a false representation of material fact"; (ii) "with knowledge of its falsity"; (iii) "for the purpose of inducing [the plaintiff] to act thereon"; (iv) that the plaintiff "relied upon the representation as true" and "that his reliance was reasonable under the circumstances"; and (v) that the plaintiff "acted upon [the representation] to his detriment." *Rodi v. S. New England Sch. of L.*, 532 F.3d 11, 15 (1st Cir. 2008). Venn fails to plead facts sufficient to meet any of the five elements.

First, Venn alleges Corbus's statements (through Mr. Cohen) that it "needed more time to conduct additional work" and that "it wouldn't be right for us to hold you back" when terminating negotiations were false representations of material fact, Doc. 70 ¶¶ 143, 166, but these statements were neither false nor statements of fact. The

---

[12] Both claims for "intentional misrepresentation," which Massachusetts courts more often call "fraudulent misrepresentation," and for fraudulent omission sound in fraud and must be pleaded with particularity under Rule 9(b). *Costa*, 2021 WL 2338963, at *11.

alleged relevant statements here were "vague and general" parting words that politely and professionally terminated Corbus's relationship with Venn. *Treadwell v. John Hancock Mut. Life Ins. Co.*, 666 F. Supp. 278, 286 (D. Mass. 1987). Venn, a sophisticated commercial entity, should have understood them to be what they were—a gentle expression of Corbus's desire to stop engaging with Venn, and nothing more.

Second, Venn has not pleaded facts to establish "knowledge of falsity." Venn claims that Corbus and Mr. Cohen *knew* the statements terminating negotiations were false "because it planned to license the child antibody" from UCSF. Doc. 70 ¶ 145. Even accepting Venn's allegations of motivation as true for the purposes of this motion, this would not plausibly establish that Corbus and Mr. Cohen knew it was false to state that it needed more time or did not want to hold Venn back from moving forward with other partners. Nor could Corbus and Mr. Cohen know that it would be able to execute a license with UCSF, since Corbus had to conduct arms-length negotiations with UCSF regarding a potential license that Venn admits did not occur until months later. Doc. 70 ¶ 79.

Third, there are no allegations to support that the "purpose" of the statement was to induce Venn to act. As Venn admits, Corbus stated "it wouldn't be right for us to hold you back from moving forward with other potential partners." By the plain language of the statement, the purpose was to communicate with Venn to go negotiate with other potential business partners, which Venn in fact did (both with potential investors and with UCSF itself).

Fourth, Venn fails to plead facts to plausibly show that Venn reasonably relied

14

on the allegedly fraudulent misrepresentation by Corbus and Mr. Cohen. Reasonable reliance requires the alleged misrepresentations to have been sufficiently specific, and "[r]eliance is not reasonable where the alleged representations are vague or indefinite." *Armstrong v. Rohm & Haas Co.*, 349 F. Supp. 2d 71, 81 (D. Mass. 2004). But as Venn has asserted that the alleged misrepresentation was Corbus's email terminating negotiations, it is unclear what Venn would have been reasonably relying on as Venn in fact admits it continued to seek licenses with other partners, including UCSF.

Fifth, Venn has failed to plausibly allege it acted on any Corbus representation to its detriment beyond pure speculation. Venn fails to allege that its losses were "*caused* by its reliance on a misrepresentation attributable to [Corbus]." *Kuwaiti Danish Computer Co. v. Digital Equip. Corp.*, 781 N.E.2d 787, 796 (Mass. 2003) (emphasis added). Venn only alleges that it "acted to its detriment and suffered financial loss" by "not seek[ing] to enjoin Corbus from using its confidential and trade secret information." Doc. 70 ¶¶ 148, 159. Venn's allegations require a causal chain "too remote and speculative to be made the ground of liability." *Fletcher v. Bartlett*, 31 N.E. 760, 761 (Mass. 1892). Venn posits that UCSF would have licensed the "child molecule" to Venn if it had not licensed it to Corbus, but this is pure speculation and belied by the fact Venn failed to secure a license to the "child molecule" for over a year, including nine months of exclusive negotiations. Doc. 70 ¶¶ 35,78. Venn assumes it would have been able to secure an injunction and that an injunction would have secured Venn's financial future, but never pleads definitively it would have sought an injunction; nor can Venn assume that this Court would have granted one even if it

had. Nor can Venn assume that it would have been successful in obtaining an investment from another partner if Corbus had not entered into a license with UCSF since Venn had failed to do so for three years. *Cf. In re Brandao*, 567 B.R. 396, 409 (Bankr. D. Mass. 2017) (dismissing misrepresentation claim where debtor's theory of detrimental reliance would have required court to credit "speculative" assertions that debtor would have applied for and executed a short sale had foreclosure not occurred).

In addition to the above-cited elements, a claim of fraud by omission requires the plaintiff to establish "both concealment of material information and a duty requiring disclosure." *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 70 (1st Cir. 2020). Here, the only alleged omission was that Corbus failed to tell Venn that it was planning to commit trade secret misappropriation. That cannot be an actionable "omission" because it would create an additional "fraudulent omission" claim in every trade secret case (or business tort case). Furthermore, a defendant may be liable for fraudulent omission "only if[] he is under a duty to the other to exercise reasonable care to disclose the matter in question." Restatement (Second) of Torts § 551 (1977); *see Wolf v. Prudential-Bache Sec., Inc.*, 672 N.E.2d 10, 12 (Mass. App. Ct. 1996). Corbus and Venn conducted an arms-length negotiation, and Venn pleads no facts that could establish any duty for Corbus to disclose to Venn whether or not it was planning to pursue other business transactions when it terminated negotiations with Corbus. *See Com. Masonry Corp. v. Barletta Eng'g Corp.*, 2014 WL 1758057, at *23 (Mass. Super. Mar. 12, 2014).

The Court should not credit Venn's stack of conjecture under Rule 12(b)(6) and Rule 9(b) and accordingly should dismiss Counts IV and VI.

**(V)    In Addition to the Claim Being Preempted, Venn also Fails to State a Claim for Negligent Misrepresentation (Count V).**

Massachusetts has adopted the standard in the Restatement of Torts for claims of negligent misrepresentation, namely: "[A] defendant is liable if in the course of his business, he [i] supplies false information [ii] for the guidance of others in their business transactions, [iii] causing and resulting in pecuniary loss to others [iv] by their justifiable reliance on the information, with [v] failure to exercise reasonable care or competence in obtaining or communicating the information." *Amorim Holdings Financeria S.G.P.S., S.A. v. C.P. Baker & Co., Ltd.*, 53 F. Supp. 3d 279, 300 (D. Mass. 2014). The alleged misrepresentation must also be a statement of fact. *Id.* Venn fails to plead a negligent misrepresentation claim, much less with the particularity required by Rule 9(b).[13]

Here, for the same reasons stated *supra* at Section IV, Venn has failed to allege facts sufficient to establish that Corbus made a statement of fact, that any such statement was false, that Venn justifiably relied on any statement, or that the statement caused Venn any non-speculative pecuniary loss. Furthermore, Venn has not plausibly alleged that Corbus and Mr. Cohen "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information." *Squeri*, 954 F.3d at 70. Information can only be unreliable (for the purposes of negligent misrepresentation) if it is "susceptible of actual knowledge." *AECOM Tech. Servs. Inc. v. Mallinckrodt LLC*, 117 F.

---

[13] Where, as here, a complaint pleads both a claim for fraud and a claim not based on fraud that rely on the same allege misrepresentation, the particularity standard under Rule 9(b) applies to both the fraud and the non-fraud claim. *Engren*, 2021 WL 4255296, at *5.

Supp. 3d 98, 108 (D. Mass. 2015). The statement on which Venn relies is not a factual statement, and thus not "susceptible to actual knowledge" and not actionable. *Harris v. Delco Prod.*, 25 N.E.2d 740, 742 (Mass. 1940). Moreover, Corbus and Mr. Cohen's statements and the alleged plan to license a mAb from UCSF or other licensors are not inconsistent.

### (VI)   In Addition to the Claim Being Preempted, Venn also Fails to State a Claim for Interference with Advantageous Business Relations (Count VII).

To plead a claim for intentional interference with business relations, a plaintiff must allege facts sufficient to plead four elements: "(1) a business relationship or contemplated contract of economic benefit; (2) the defendant's knowledge of such relationship; (3) the defendant's interference with it through improper motive or means; and (4) the plaintiff's loss of advantage directly resulting from the defendant's conduct." *Am. Private Line Servs., Inc. v. E. Microwave, Inc.*, 980 F.2d 33, 36 (1st Cir. 1992). Venn asserts that Defendants unlawfully interfered with its potential business relationship with UCSF, but fails to plead facts sufficient to meet the required elements.

First, Venn does not allege facts sufficient to establish a reasonable expectation to take a license from UCSF, or that Defendants' allegedly improper conduct caused Venn to lose any licensing opportunity from UCSF. Venn admits that Venn and UCSF's period of exclusive negotiation had expired in December 2020 without Venn acquiring the license. Doc. 70 ¶¶ 34, 177. Venn admits that at that time, it had still not secured the funding it needed to maintain a development program—and UCSF

*required* Venn to secure this funding before it would license what Venn calls "the child molecule" to Venn. *Id.* ¶ 35. Venn also admits that it submitted a bid to UCSF in March 2021, after its exclusive negotiation period had already ended. *Id.* ¶ 77. Considering Venn's year-long unproductive negotiations with UCSF, the expiration of Venn's exclusivity contract, and Venn's ongoing financial struggles, it would have been *unreasonable* for Venn to expect to obtain a license from UCSF. Thus, Venn has failed to allege that Defendants interfered with a "business relationship or contemplated contract of economic benefit." *Singh v. Blue Cross/Blue Shield of Massachusetts, Inc.*, 308 F.3d 25, 47 (1st Cir. 2002) ("[The plaintiff] may not speculate about future business relationships when alleging this tort."); *see also Sherman v. Clear Channel Outdoor, Inc.*, 889 F. Supp. 2d 168, 177 (D. Mass. 2012) (holding that a "mere possibility that [Plaintiff's] proposal would be accepted by the permitting authority is not sufficient" to allege that a "specific business relationship existed").

Second, Venn fails to plead an adequate basis to show "improper motive or means" to ground a claim for intentional interference. To successfully plead improper motive or means, a plaintiff must plead facts to establish "wrongfulness beyond the interference itself." *James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co.*, 112 F.3d 1240, 1250 (1st Cir. 1997). An improper motive can be established by showing "retaliation or ill will toward the plaintiff." *Ayyadurai v. Floor64, Inc.*, 270 F. Supp. 3d 343, 369 (D. Mass. 2017). "Neither personal or financial gain, nor personal dislike, is enough to satisfy the improper motive requirement." *Comeau v. Town of Webster, Mass.*, 881 F. Supp. 2d 177, 190 (D. Mass. 2012). Pursuing a license—to which Venn no longer had

exclusive negotiating rights and when UCSF was accepting bids from multiple parties including Venn and Corbus in March 2021—that was relevant to Corbus's "legitimate corporate interest" cannot satisfy the law's requirement that the interference be tortious, that is, done with "actual malice." *Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc.*, 864 N.E.2d 518, 541 (Mass. App. Ct. 2007). Venn also fails to allege improper means because it fails to adequately allege that Defendants misappropriated its trade secrets or misrepresented its reasons for terminating negotiations.

Finally, Venn also fails to plead facts to establish that Defendants were responsible for a loss of business advantage. Instead, the only facts presented are that Venn failed to license the "child molecule" during the period of exclusive negotiations with UCSF and then failed again after that period expired. Venn may not rely upon the conclusory allegation that Defendants caused Venn's second failure to license the "child molecule" when its own complaint presents the contradictory facts that showed Venn was unlikely to obtain the license. This allegation is a far cry from the law's requirement that Venn plead facts to plausibly establish that it experienced harm as a "direct result" of Defendants' conduct. *Singh*, 308 F.3d at 47.

### (VII)  In Addition to the Claim Being Preempted, Venn's Claim for Unjust Enrichment Fails as a Matter of Law Because it Overlaps with Other Claims (Count VIII).

Venn's unjust enrichment claim (Count VIII) is "mutually exclusive" with Venn's other claims, and therefore must be dismissed. *Tomasella v. Nestle USA, Inc.*, 962 F.3d 60, 84 (1st Cir. 2020). The remedy of unjust enrichment is an "equitable stopgap" to cover for the "occasional inadequacies in contractual remedies at law." *In re McCabe*,

345 B.R. 1, 9 (D. Mass. 2006). As such, it is not available where a plaintiff has an adequate legal remedy. *Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019); *see Tomasella*, 962 F.3d at 84 (clarifying that both breach of contract and unjust enrichment claims may survive a motion to dismiss only where, unlike here, the parties dispute there is a binding contract and thus there is a question whether a contractual entitlement exists). Venn's other claims provide a remedy at law; thus it may not pursue relief on the equitable theory of unjust enrichment. *See Fernandes v. Havkin*, 731 F. Supp. 2d 103, 114 (D. Mass. 2010) (finding plaintiff's negligence and Chapter 93A claims precluded unjust enrichment claim).

The fact that Venn's other claims that provide for monetary damages also should be dismissed does not affect how the rule is applied here. So long as a plaintiff has a claim that offers a legal remedy, the unjust enrichment claim cannot survive. "It is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017).

**(VIII) In Addition to the Claim Being Preempted, Venn's Unfair Competition Fails to Establish that the Alleged Acts Occurred "Primarily and Substantially" in the Commonwealth of Massachusetts (Count IX).**

Venn's unfair competition claim fails because the alleged unlawful conduct did not occur "primarily and substantially" in Massachusetts, as required by Section 11 of Chapter 93A of the Massachusetts General Laws. Venn's complaint makes clear that the primary locus of the alleged acts in fact took place in Florida, not Massachusetts.

In order to invoke the protection of Chapter 93A, commercial entities like Venn

must allege that "the actions and transactions constituting the alleged unfair method of competition or the unfair or deceptive act or practice occurred ***primarily and substantially*** within the commonwealth" of Massachusetts." Mass. Gen. Laws ch. 93A, § 11 (emphasis added); *see Am. Mgmt. Servs., Inc. v. George S. May Int'l Co.*, 933 F. Supp. 64, 68 (D. Mass. 1996) (plaintiff bears the burden of producing a set of factual allegations that "invoke the provisions of Chapter 93A"). "[C]ourts have not hesitated to dismiss Chapter 93A claims at the 12(b)(6) stage where a plaintiff fails to allege that it suffered sufficient injuries within Massachusetts," because "whether a defendant's actions and transactions occurred primarily and substantially in Massachusetts for purposes of Chapter 93A jurisdiction is unquestionably a matter of law," suitable to court review at the motion to dismiss stage. *Oliver Wyman, Inc. v. Eielson*, 2016 WL 5339549, at *13 (S.D.N.Y. Sept. 22, 2016) (collecting cases).

The law's "primarily and substantially" limitation means that not all unfair trade practices that simply touch Massachusetts or involve a Massachusetts citizen will invoke the law's jurisdiction. *See Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1410 (11th Cir. 1998). Rather, the Massachusetts statute authorizes suit only where "the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." *Uncle Henry's Inc. v. Plaut Consulting Co.*, 399 F.3d 33, 44 (1st Cir. 2005). To locate the center of gravity of wrongful conduct, courts examine "where the defendant committed the alleged deceptive acts, where the plaintiff was deceived and acted upon the deception, and the situs of plaintiff's losses." *Id.* at 38.

Venn's allegations effectively plead Venn out of its Chapter 93A claim because they show that any alleged improper conduct or injuries were centered in Florida, not Massachusetts. Venn alleges that Corbus conducted business in Florida; relevant negotiations took place Florida; Corbus conducted negotiations through Mr. Wenke, who "was located in Florida throughout the majority of the negotiations;" Venn's relevant rights are located in Florida; Corbus purportedly harmed Venn in Florida; and "a substantial part of the events or omissions giving rise to the claims occurred in [Florida]." Doc. 70 ¶¶ 13, 15. Where "the significant contacts of the competing jurisdictions are approximately in the balance, the conduct in question cannot be said to have occurred primarily and substantially in Massachusetts." *Uncle Henry's*, 399 F.3d at 45. Thus, Venn's own allegations of Florida-centered conduct and harm demonstrate that under "no conceivable set of facts, reasonably consistent with the complaint," could Venn prove that the unlawful conduct occurred primarily and substantially in Massachusetts, as Chapter 93A requires. *Am. Mgmt. Servs., Inc.*, 933 F. Supp. at 68 (granting motion to dismiss where "nowhere in the complaint is there any allegation that defendants acted in Massachusetts," *id.* at 67).

Venn offers only three allegations that connect this case to Massachusetts: (1) Corbus is headquartered in Massachusetts; (2) the MNDA is governed by the laws of Massachusetts; and (3) the conclusory assertion that "Corbus'[s] unfair and deceptive conduct occurred primarily and substantially in Massachusetts." Doc. 70 ¶¶ 6, 60, 196. Each is insufficient to invoke the protection Chapter 93A.

First, the location of Corbus's headquarters is irrelevant to Chapter 93A.

23

"Chapter 93A does not require Massachusetts citizenship, but that the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." *Weber v. Sanborn*, 502 F. Supp. 2d 197, 199 (D. Mass. 2007). Otherwise, "the application of [Chapter 93A would be required] in every case involving a Massachusetts defendant, a proposition the courts have rejected." *Camp Creek*, 139 F.3d at 1410. Courts routinely find that a defendant's citizenship does not satisfy Chapter 93A's "primarily and substantially" requirement. *See e.g.*, *Sonoran Scanners, Inc. v. PerkinElmer, Inc.*, 585 F.3d 535, 546 (1st Cir. 2009).

Second, "[t]he fact that the [MNDA] provided that Massachusetts law would govern does not require a finding that the center of gravity for Chapter 93A liability is in Massachusetts." *Id.*

Third, the conclusory allegation that "Corbus'[s] unfair and deceptive conduct occurred primarily and substantially in Massachusetts," Doc. 70 ¶ 196, runs afoul of the basic principle of federal pleading that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a plausible claim for relief]." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1100 (11th Cir. 2021); s*ee also Oliver Wyman*, 2016 WL 5339549, at *14 (finding conclusory, and discounting, plaintiff's averment that "Defendants' acts and omissions took place primarily and substantially within Massachusetts").

Venn failed to plead facts alleging that any unfair conduct occurred "primarily and substantially" in Massachusetts; instead, the complaint is replete with allegations tying any unfair conduct to Florida. Therefore, the Court should dismiss Count IX.

### Conclusion

For the foregoing reasons, Defendants respectfully request that this Court dismiss the complaint in its entirety.

### CERTIFICATE OF GOOD FAITH CONFERENCE

Pursuant to Local Rule 3.01(g), Corbus's counsel conferred with Venn's counsel, Simon Franzini, by telephone on May 6, 2022, who confirmed that Plaintiff opposes the relief request herein.

Dated: May 6, 2022

OF COUNSEL:

Robert D. Carroll (*pro hac vice*)
Lana S. Shiferman (*pro hac vice*)
GOODWIN PROCTER LLP
100 Northern Avenue
Boston, MA 02210
rcarroll@goodwinlaw.com
lshiferman@goodwinlaw.com

Respectfully submitted,

<u>s/ Kelli A. Edson</u>
Kelli A. Edson
Florida Bar No. 179078
QUARLES & BRADY LLP
101 East Kennedy Boulevard, Ste. 3400
Tampa, Florida 33602-5195
Telephone: 813-387-0300
kelli.edson@quarles.com
*Attorneys for Defendants*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was filed on May 6, 2022, using the Court's CM/ECF system and that a true and accurate copy was served by electronic mail via the CM/ECF system to:

David L. Luikart, III, Esq.
HILL WARD HENDERSON
101 E. Kennedy Blvd., Suite 3700
Tampa, FL 33602
Dave.luikart@hwhlaw.com
*Attorneys for Plaintiff*

Simon Franzini, Esq.
Gabriel Z. Doble, Esq.
DOVEL & LUNER LLP
201 Santa Monica Blvd., Suite 600
Santa Monica, CA 90401
*Attorneys for Plaintiff*

                         s/ Kelli A. Edson